UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-CV-22846

SHELLEY HUTCHINSON,

    Plaintiff,

v.

MENIN HOTELS, LLC, d/b/a
MENIN HOSPITALITY, LLC;
1220 MANAGEMENT GROUP, LLC, d/b/a
BODEGA TAQUERIA Y TEQUILA; and
AIRSTREAM FOOD SERVICES, LLC, d/b/a
BODEGA TAQUERIA Y TEQUILA;

    Defendants.

_____/

**DEFENDANTS' JOINT MOTION TO DISMISS AMENDED COMPLAINT**

    COMES NOW, the Defendants, MENIN HOTELS, LLC, d/b/a MENIN HOSPITALITY, LLC; 1220 MANAGEMENT GROUP, LLC, d/b/a BODEGA TAQUERIA Y TEQUILA; and AIRSTREAM FOOD SERVICES, LLC, d/b/a BODEGA TAQUERIA Y TEQUILA (collectively, the "Defendants"), by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 12(b), and hereby file this *Defendants' Joint Motion to Dismiss Amended Complaint* (DE 19) filed by the Plaintiff, SHELLEY HUTCHINSON, and for good cause, state as follows:

    1.    The Plaintiff has filed a nine-count Amended Complaint (DE 19) against the Defendants, seeking injunctive relief damages pursuant to Title III of the Americans with Disabilities Act of 1990 (hereinafter "ADA), the Florida Civil Rights Act of 1992 (hereinafter "FCRA"), and other tortious claims.

1

2. The Plaintiff's claims stem from her alleged denial in a single incident into the establishment located at 1220 16th Street in Miami Beach and known as Bodega Taqueira Y Tequila ("Bodega"). The Plaintiff claims that she suffers from epilepsy and that she suffered damages when the Defendants refused entry to her and her service dog into Bodega.

3. After the Defendants filed their Motion to Dismiss (DE 14) the Plaintiff's original Complaint (DE 1), the Plaintiff then filed her Amended Complaint (DE 19) in an apparent effort to remedy some of the fatal flaws in her pleadings.

4. For example, in her original Complaint, the Plaintiff impermissibly sought monetary damages in her ADA claims but has now amended those claims to seek injunctive relief. Additionally, the Plaintiff clarified her pleadings in that she claims that the denied entry into Bodega has "exacerbated her seizures." Lastly, the Plaintiff, in her attempt to claim a sufficient likelihood that she will be affected by the alleged unlawful conduct in the future, has now claimed that, at some unidentified point after her claimed denial, her counsel contacted an entity other than Bodega, "to remedy the discrimination" and that, at some unidentified time in the future, "she intends to return to Bodega." *See* Amended Complaint (DE 19), ¶ 37, 38.

5. These additions to the Plaintiff's pleading do not fix the major and obvious defects of her pleadings. The Amended Complaint should be dismissed for the following reasons, as explained in more detail herein:

   a. The Plaintiff lacks standing to bring her ADA claims. The Plaintiff is a New York resident with no actual plans to return to Florida or Bodega and even asserts that she cannot do so due to COVID-19 travel restrictions. Thus, the Plaintiff has not alleged a real and immediate threat of future harm. Additionally, there is no causal connection between the Plaintiff's claimed injury (increased seizures and anxiety)

and the alleged actions of the Defendants, where, the Plaintiff's allegations show that these conditions were suffered before the alleged incident.

    b. The Plaintiff's claims pursuant to the FCRA are impermissible because the Plaintiff failed to exhaust administrative remedies required under the FCRA prior to instituting this action. Further, to the extent the federal ADA claims are dismissed, the remaining state claims under the FCRA should also be dismissed.

    c. The Plaintiff's allegations supporting its claims for intentional infliction of emotional distress do not rise to the extremely high standard that must be alleged to show "extreme and outrageous conduct" and "severe" emotional stress. Additionally, to the extent the federal ADA claims are dismissed, the remaining state claims should also be dismissed.

## **MEMORANDUM OF LAW IN SUPPORT OF DISMISSAL**

**I.  LEGAL STANDARD FOR MOTION TO DISMISS**

6. Fed. R. Civ. P. 8(a) requires a complaint to contain a "short and plain statement…showing that the pleader is entitled to relief." When a complaint is presented to the court, "an attorney or unrepresented parties certifies that to the best of the person's knowledge, information, and belief…the legal contentions are warranted by existing law…[and] the factual contentions have evidentiary support…" Fed. R. Civ. P. 11(b).

7. To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Am. Humanist Ass'n, Inc. v. City of Ocala*, 127 F. Supp. 3d 1265, 1279 (M.D. Fla. 2015) (citations omitted).

8. While the court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F.

Supp. 2d 517, 526 (E.D. Pa. 2010). "[M]ere unsupported conclusions of fact or mixed fact and law are not admitted. *N. Tr. Co. v. Peters*, 69 F. 3d 123, 129 (7th Cir. 1995). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F. 3d 51, 53 (2d Cir. 1996). Additionally, "[l]egal conclusions, deductions or opinions masked as factual allegations, however, are not given a presumption of truthfulness." *In re Gitlitz*, 127 B.R. 397, 399 (Bankr. S.D. Ohio 1991). This is especially true "when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." *Associated Builders, Inc. v. Alabama Power Co*., 505 F. 2d 97, 100 (5th Cir. 1974) (citations omitted).

## II. COUNTS I, II, AND III FAIL TO STATE A VALID CAUSE OF ACTION UNDER TITLE III OF THE ADA.

9. In Counts I, II, and III of the Amended Complaint, the Plaintiff seeks an "injunction preventing Hotel from further discrimination" against each of the Defendants respectively for claimed violations of Title III of the ADA. The Plaintiff's ADA claims should be dismissed for lack of standing because: (1) the Plaintiff has failed to allege a real and immediate threat of future injury, and (2) the Plaintiff has failed to adequately allege a causal connection to the claimed injury-in-fact.

10. In order to have standing, the Plaintiff must satisfy the following requirements: "(1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision'." *Kennedy v. Solano*, 735 Fed. Appx. 653, 655 (11th Cir. 2018), citing *Shotz v. Cates*, 256 F. 3d 1077, 1081 (11th Cir. 2001). Additionally, in the context of a claim pursuant to the ADA, "a

4

plaintiff must also plausibly show that she will suffer disability discrimination by the defendant in the future" and the threat of future injury must be "real and immediate." *Id.*

      **A.    PLAINTIFF HAS FAILED TO ALLEGE A REAL AND IMMEDIATE THREAT OF FUTURE HARM.**

11.    The Plaintiff has failed to sufficiently plead that she is likely to suffer future injury and therefore, she cannot establish standing to seek prospective injunctive relief.

12.    In order to have standing, the Plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F. 3d 1323, 1328 (11th Cir. 2013). Such a showing "requires a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Id.* (internal citation omitted). "Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F. 3d 1262, 1284 (11th Cir. 2001) (citations omitted).

13.    The Supreme Court of the United States has addressed the issue of whether a party has sufficiently alleged the likelihood of suffering future injury in the case of *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In the *Lyons* matter, the plaintiff was stopped by police officers who, despite no resistance from the plaintiff, administered a chokehold. The Supreme Court concluded that, in order for the plaintiff to establish an actual controversy,

> Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.

*City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). The Supreme Court further reasoned that the plaintiff's fear that he will face such conduct again does not establish a likelihood of future injury, providing that,

> …Lyons alleged that he feared he would be choked in any future encounter with the police. The reasonableness of Lyons' fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct. It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant.

*Id.*, at 107, n.8 (1983).

14. In this case, the Plaintiff does not reside in Florida where Bodega is located, does not allege that she travels often to Florida or has immediate plans to do so, or that she has actual plans to return to Bodega. *See* Amended Complaint (DE 19), ¶ 2. Instead, the Plaintiff asserts that she "desires and intends to return to Bodega once COVID related travel and restrictions are lifted and is free to travel." *See* Amended Complaint (DE 19), ¶ 39. This allegation, alone, is fatal to the Plaintiff's claim. If the Plaintiff is incapable of traveling to Florida, then any assertion that she will be returning to Bodega in the near future "would necessarily involve speculation." *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 830, 833 (D. Md. 1998). The Plaintiff has no travel plans at any time in the near future. Additionally, the Plaintiff hasn't specifically cited to a single travel restriction that prohibits her from traveling to Florida at this time, which demonstrates her lack of intent to travel to Florida or visit Bodega. The Plaintiff's bare allegation that she supposedly contacted Menin (**not Bodega**) is equally immaterial because contacting Menin simply to tell them about the alleged incident does not equate to making plans to return to Bodega. Further, the fact that the Plaintiff allegedly received no response from Bodega does not create a likelihood that the alleged unlawful conduct will occur again in the future.

15. The Plaintiff's claims are nothing more than conjectural and hypothetical allegations. *Houston*, 733 F. 3d at 1328. In applying the Supreme Court's analysis in *Lyons* to the facts at hand, the Plaintiff's allegations are clearly deficient and do not show **real** and **immediate** threat of **future** injury. The Plaintiff has not made a credible allegation that all employees at Bodega would engage in the same alleged conduct, or that Bodega ordered or authorized its employees to act in such a manner.[1] *Lyons*, at 105-106. The Plaintiff cannot rely on her subjective fears about being denied entry to cure the absence of a real and immediate threat of future injury. *Id*., at 107, n.8.

16. The Plaintiff can only point to a past alleged wrongful incident and her assertions offer nothing more than conjecture and hypothetical future visits and denied entry. Because the Plaintiff has failed to sufficiently allege a substantial likelihood she will be affected by the allegedly unlawful conduct in the future or that there is a real and immediate threat of future injury, the Plaintiff lacks standing to bring Counts I, II, and III.

---

[1] The Plaintiff alleges that, "[u]pon information and belief, Kelvin was, at all relevant times herein, acting in accordance with the direction of, and under the control of, 1220." *See* Amended Complaint (DE 19), ¶ 28. These indefinite and uncertain allegations that rely on "information and belief," as opposed to pleading a statement of facts as to why she has such a belief, are equally insufficient and warrant dismissal. *Cosmopolitan Fire Ins. Co. v. Putnal*, 53 So. 444 (Fla. 1910) ("The allegations of a plea in a common-law action should be stated positively, and not upon information and belief; and if its allegations are predicated on information and belief, it will be subject to demurrer."); *See also Keith v. Univ. of Miami,* 437 F. Supp. 3d 1167, 1171 (S.D. Fla. 2020) ("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss…If allegations are indeed more conclusory than factual, then the court does not have to assume their truth.") (citations omitted).

### B. PLAINTIFF'S ALLEGED INJURY IS NOT TRACEABLE TO THE DEFENDANTS.

17. The Plaintiff also cannot establish standing because she cannot allege a causal connection between the Defendants' alleged actions and the claimed injury.

18. The Plaintiff claims that, since she was denied entry to Bodega, she has suffered periodic panic attacks, been subject to undue stress exacerbating her seizures, and has experienced night terrors. *See* Amended Complaint (DE 19), ¶ 36. Despite the Plaintiff's efforts to amend her pleadings to tie her alleged injuries to the Defendants, she still cannot do so. The Plaintiff's entire suit relies on her disability of epilepsy that she claims to suffer and that the condition "causes her to suffer from focal seizures." *See* Amended Complaint (DE 19), ¶ 14. The Plaintiff further alleges that because of the claimed incident, she suffers from "increased anxiety" and has been prescribed "additional anxiety medications." *See* Amended Complaint (DE 19), ¶ 36, 42-44.

19. The Plaintiff's assertions show that she has not alleged injury that is traceable to the complained of conduct of the Defendants as opposed to some other independent action, including her preexisting condition of epilepsy itself. According to her own allegations, the Plaintiff's condition causes her seizures and she was prescribed anxiety medications prior to the alleged incident. Because the Plaintiff has not sufficiently alleged a causal connection between the Defendants' claimed actions and her asserted injuries, the Plaintiff has not sufficiently pled standing to proceed with Counts I, II, and III.

20. Based on the facts set forth in the Plaintiff's Amended Complaint, the Plaintiff lacks standing to bring Counts I, II, and III against the Defendants and therefore, this Court lacks subject matter jurisdiction. *Shotz v. Cates*, 256 F. 3d 1077, 1081 (11th Cir. 2001) ("On defendants' motion to dismiss we must evaluate standing based on the facts alleged in the complaint, and we may not

speculate concerning the existence of standing or piece together support for the plaintiff.") (citation omitted).

### III.   COUNTS IV, V AND VI FAIL TO STATE VALID CAUSES OF ACTION UNDER THE FCRA AND WARRANT DISMISSAL.

21.   The Plaintiff's Counts IV, V and VI seek relief against the Defendants (respectively), alleging that the Defendants violated the FCRA by discriminating and denying the Plaintiff access to the accommodations of Bodega in the single incident that the Plaintiff alleges occurred in August, 2019. The Plaintiff's claims should be dismissed because: (1) the Plaintiff has failed to exhaust the required administrative remedies prior to filing this action, and (2) should this Court grant the Defendants' motion to dismiss the remaining causes of action of the Amended Complaint, then the Court is encouraged to decline exercising supplemental jurisdiction over the Plaintiff's state-law claims.

### A.   THE PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS REQUIRED BY FCRA.

22.   The Plaintiff alleges that the Defendants' actions were "in violation of the Florida Civil Rights Law, Title XLIV Chapter 760 of the 2019 Florida Statutes, yet the Plaintiff has failed to allege that she has complied with the FCRA's well-established requirements and prerequisites to filing suit. *See* Amended Complaint (DE 19), ¶ 99, 107, 115.

23.   Section 760.11, Fla. Stat. (2019) establishes the remedies afforded to a person for violations of the FCRA. Section 760.11, Fla. Stat. (2019) provides, in pertinent part,

> (1) Any person aggrieved by a violation of ss. 760.01-760.10 may file a complaint with the commission within 365 days of the alleged violation, naming the employer, employment agency, labor organization, or joint labor-management committee, or, in the case of an alleged violation of s. 760.10(5), the person responsible for the violation and describing the violation.
> …

9

> (4) If the commission determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992, the aggrieved person may either:
>
>> (a) Bring a civil action against the person named in the complaint in any court of competent jurisdiction; or
>> (b) Request an administrative hearing under ss. 120.569 and 120.57.
>
> The election by the aggrieved person of filing a civil action or requesting an administrative hearing under this subsection is the **exclusive procedure** available to the aggrieved person under this act.
> …

§ 760.11, Fla. Stat. (2019) (emphasis added). The FCRA defines "Commission" as the "Florida Commission on Human Relations." § 760.02(2), Fla. Stat. (2019).

24. It follows, in order for the Plaintiff to file this civil action; the Plaintiff would have had to comply with the FCRA by filing a complaint with the commission prior to instituting the action. *Ross v. Jim Adams Ford, Inc.*, 871 So. 2d 312, 315 (Fla. 2d DCA 2004) ("Although this statute states that a complaint 'may' be filed with the Commission, it is clear that such a complaint must be filed either with the Commission or its federal counterpart by anyone who wishes to pursue either a lawsuit or an administrative proceeding under this act.").

25. The Plaintiff did not do so, nor does she even allege that she complied with this mandatory condition precedent to filing the instant lawsuit. Further, these claims should be dismissed with prejudice because the Plaintiff failed to file a complaint with the commission within 365 days of the alleged violation as required by Section 760.11(1), Fla. Stat. (2019). Thus, the case and controversy are not ripe for determination, the claims are time-barred, and this Court lacks jurisdiction to hear this matter.

26. The Plaintiff has argued in the past that Section 760.11(1), Florida Statutes applies only to individuals who have been discriminated in the course of their employment and those

claims that are filed with the Equal Employment Opportunity Commission ("EEOC").[2] This interpretation is simply wrong. First, it is contrary to the plain language of the statute, which explicitly states that it is applicable to **all** grievances of the FCRA, including those aggrieved by a discriminatory act of a place of public accommodation. *See* § 760.11(1), Fla. Stat. (2019) ("Any person aggrieved by a violation of ss. **760.01-760.10** may file a complaint…") (emphasis added). Thus, this language expressly includes Section 760.08, the section of the FCRA under which the Plaintiff seeks relief for alleged discrimination in a place of public accommodation. *See* §§ 760.08 and 760.11(1), Fla. Stat. (2019) and Amended Complaint (DE 19), ¶94, 102, 110. Had the legislature intended for the remedies of Section 760.11 to be limited to only claims against an employer, it would have limited its application solely to Section 760.10 (titled "Unlawful employment practices."). *See* §§ 760.10 and 760.11(1), Fla. Stat. (2019).  Further, had the legislature intended for complaints under Section 760.11 to be limited to those against employers filed with the EEOC, it would have stated so. It did not. Instead, the legislature stated that complaints for violations of the FCRA may be filed by **any person** with the **Commission**. *See* § 760.11(1), Fla. Stat. (2019). Thus, the Plaintiff's interpretation is illogical.

27. The Plaintiff's interpretation is not only contrary to the plain language of the FCRA, but it is contrary case law interpreting the FCRA to require the administrative process be followed by all aggrieved persons, not just employees. For example, in the matter of *Sheely v. MRI Radiology Network, P.A.*, 505 F. 3d 1173 (11th Cir. 2007), a blind individual, together with her guide dog, were denied access to a medical facility. The United States Court of Appeals for the Eleventh Circuit determined that the plaintiff failed to exhaust her administrative remedies under

---

[2] *See* Plaintiff's Response in Opposition to Motion to Dismiss Complaint (DE 20), p. 7-8.

11

the FCRA prior to instituting the lawsuit and therefore, the lower court properly granted summary judgment as to the plaintiff's state law claims. *Id*. at 1205.

28. Equally inaccurate is the Plaintiff's past argument that usage of the word "may" in Section 760.11(1) creates an option, not an obligation, to file an administrative complaint before filing suit.[3] In doing so, the Plaintiff relies on case law that generally distinguishes between the use of the words "may" and "must." The Plaintiff is essentially requesting that this Court ignore case law that explicitly provides that, despite use of the word "may," "it is clear that such a complaint **must** be filed with the Commission or its federal counterpart **by anyone** who wishes to pursue either a **lawsuit** or an administrative proceeding under this act." *Ross*, 871 So. 2d at 315 (Fla. 2d DCA 2004) (emphasis added).[4] The Plaintiff also ignores the language of Section 760.11(4), Florida Statutes, which describes those remedies as the "**exclusive procedure** available to an aggrieved person under this act." § 760.11(4), Fla. Stat. (2019) (emphasis added).

29. Given that, (1) the FCRA administrative requirements apply to **any person** seeking relief for violations of the FCRA, including those violations alleged by the Plaintiff pursuant to Section 760.08, and not just employees filing complaints with the EEOC; (2) the administrative remedies are not optional and a complaint must be filed with the Commission prior to filing suit;

---

[3] *See* Plaintiff's Response in Opposition to Motion to Dismiss Complaint (DE 20), p. 8-9.

[4] The Plaintiff, in grasping for any argument to remedy its obvious failure to comply with the FCRA, makes the argument that the *Ross* court got it wrong. *See* Plaintiff's Response in Opposition to Motion to Dismiss Complaint (DE 20), p. 9. There is **no authority whatsoever** to suggest that the court in *Ross* misinterpreted the *Sweeney* decision. *Sweeney v. Florida Power & Light Co., Inc.*, 725 So. 2d 380 (Fla. 3d DCA 1998). In *Sweeney*, the Florida's Third District Court of Appeal affirmed the lower court's decision to grant an employer's motion for summary judgment based on an employee's age discrimination action under the FCRA. The *Sweeney* court held that the employee's filing of her lawsuit without fully exhausting the remedies under the FCRA (specifically, waiting the 180-day period after filing a grievance with the Commission under the FCRA) before filing its lawsuit warranted dismissal. The *Ross* court applied the *Sweeney* decision in its determination that an administrative complaint is a prerequisite to filing an action under the FCRA.

and (3) the Plaintiff has not alleged compliance with the FCRA's requirements to exhaust administrative remedies prior to filing suit; the Plaintiff's Counts IV, V, and VI warrant dismissal.

> **B. THIS COURT HAS THE AUTHORITY TO DECLINE TO EXERCISE ITS SUPPLEMENTAL JURISDICTION ONCE THE FEDERAL CLAIMS ARE DISMISSED.**

30. The Defendants request that the Plaintiff's state-law claims in Counts IV, V and VI be dismissed and that this Court decline to exercise supplemental jurisdiction over the state law claims in the event that this Court dismisses all claims over which it has original jurisdiction (specifically, Counts I, II, and III).

31. 28 U.S.C. § 1367 provides, in pertinent part,

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> **(1) the claim raises a novel or complex issue of State law,**
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> **(3) the district court has dismissed all claims over which it has original jurisdiction, or**
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (emphasis added). Thus, district courts have the authority and discretion to decline to exercise supplemental jurisdiction "for a number of valid reasons. Accordingly, ... 'district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity....'" *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir. 2003), citing *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 172–73 (1997).

32. While this Court has discretion in its determination, it is encouraged that state claims be dismissed when federal claims have been dismissed prior to trial. *Wilk v. St. Lucie County Fla. Sheriff Office*, 740 Fed. Appx. 658, 665 (11th Cir. 2018) ("We 'encourage district

13

courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.'") (citing *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *E.g., Holt v. Crist*, 233 Fed.Appx. 900, 904, 2007 WL 1156938 (11th Cir. 2007); and *Heald v. Ocwen Loan Servicing, LLC*, 3:13-CV-993-J-34JRK, 2014 WL 4639410, at *7 (M.D. Fla. Sept. 16, 2014).

33. As further support for this Court to decline to exercise supplemental jurisdiction, to the extent that this Court entertains the Plaintiff's argument that the language of the FCRA creates an option, and not an obligation, to seek administrative relief prior to filing suit, then this would create a novel or complex issue of state law as addressed in 28 U.S.C. § 1367(c)(1).

34. Accordingly, the Defendants request that, upon dismissal of the pending federal claims (Counts I, II, and III), that this Court decline to exercise supplemental jurisdiction and dismiss Counts IV, V, and VI.

### IV. COUNTS VII, VIII AND IX SEEKING DAMAGES FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED.

35. In Counts VII, VIII and IX, the Plaintiff seeks relief against the Defendants in the form of damages for intentional infliction of emotional distress ("IIED"). The Plaintiff claims that the Defendants engaged in extreme and outrageous conduct in denying her entry into Bodega.

#### A. THIS COURT HAS THE AUTHORITY TO DECLINE TO EXERCISE ITS SUPPLEMENTAL JURISDICTION ONCE THE FEDERAL CLAIMS ARE DISMISSED.

36. For the reasons set forth in Section III.B. herein, the Defendants respectfully request that this Court decline to exercise supplemental jurisdiction of Counts VII, VIII and IX and that these claims be dismissed.

## B. THE PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE EXTREME AND OUTRAGEOUS CONDUCT AND SEVERE EMOTIONAL DISTRESS.

37. The Plaintiff's claims should also be dismissed for failure to sufficiently plead a claim for IIED.

38. "To state a claim of intentional infliction of emotional distress, the plaintiff must allege that 1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe." *Hoffman v. Office of State Attorney, Fourth Judicial Circuit*, 793 Fed. Appx. 945, 955 (11th Cir. 2019) (citations omitted). Additionally, "[l]iability will be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 955-56 (citation omitted). "Whether conduct is sufficiently outrageous to rise to the level of intentional infliction of emotional distress is a question of law." *Haberski v. Bufano*, 728 Fed. Appx. 903, 909 (11th Cir. 2018). The question is an objective one – the subjective response of the victim does not control. *Frias v. Demings*, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011). "Although there is no exhaustive or concrete list of what constitutes 'outrageous conduct,' Florida common law has 'evolved an extremely high standard.'" *Yule v. Ocean Reef Cmty. Ass'n*, 19-10138-CIV, 2020 WL 3051505, at *6 (S.D. Fla. June 8, 2020) (citation omitted). In fact, "conduct which is independently tortuous, or even criminal has been found not to cross this high threshold for outrageousness." *Baker v. Lightsey*, 2:11-CV-14290-KMM, 2012 WL 1574649, at *5 (S.D. Fla. May 3, 2012) (citation omitted). Additionally, in order to be considered "outrageous" conduct, the conduct "typically requires offensive physical contact." *McGinity v. Tracfone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1341 (M.D. Fla. 2014).

39. While the Defendants dispute the accuracy of the acts that the Plaintiff claims caused emotional distress, even assuming *arguendo* that these acts did occur, they do not rise to the level of extreme and outrageous conduct necessary to state a claim for IIED.[5]

40. The Plaintiff has not sufficiently pled the requisite "severity" of the emotional distress to entitle her to relief. *Casado v. Miami-Dade County*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018) ("In regards to the severity of the emotional distress, the law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.") (citation omitted). The Plaintiff has included conclusory allegations of severe mental anguish, frustration, increased anxiety, stress and night terrors, none of which is severe emotional distress. *Baker v. Lightsey*, 2:11-CV-14290-KMM, 2012 WL 1574649, at *5 (S.D. Fla. May 3, 2012) (finding that

---

[5] For example, in *Casado v. Miami-Dade County*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018), the plaintiff's claim for intentional infliction of emotional distress was dismissed because the allegations failed to qualify as extreme and outrageous conduct, despite the plaintiff alleging excessive force during a traffic stop including being slammed into the hold of the officer's car, being punched in the face by officers, profane language being used, and being arrested.

Similarly, in *Baker v. Lightsey*, 2:11-CV-14290-KMM, 2012 WL 1574649, at *5 (S.D. Fla. May 3, 2012), this Court found that, notwithstanding the eighty-two (82) year old plaintiff's allegations of wrongful arrest, excessive force, and using profanity by the defendant, the defendant's actions did not meet the threshold for outrageous conduct necessary to sustain a claim of intentional infliction of emotional distress.

In *Foreman v. City of Port St. Lucie*, 294 Fed. Appx. 554, 558 (11th Cir. 2008), the plaintiff's IIED claim was based on a police officer's actions in pointing a BB gun at her husband's chest and pulling the trigger. The plaintiff did not know that the gun was unloaded. This conduct was not sufficiently outrageous to support a claim for IIED.

In *Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1152 (M.D. Fla. 2016), the plaintiff "alleged that he was subjected to a discriminatorily applied pay policy, issued unfounded discriminatory actions, his job duties were limited, and he was accused of watching pornography on his work computer and ordered to seek treatment for same…While such conduct, if true, is clearly offensive, it does not rise to the level of extreme and outrageous required to support a claim for IIED." (internal citation omitted).

bad dreams do not constitute sufficient emotional distress); *Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011) ("While being subject to false arrest is embarrassing, it is not sufficiently extreme and outrageous absent some other grievous conduct.").

41.  Given that "courts uphold these [IIED] claims only in extremely rare circumstances," and the Plaintiff's allegations do not rise to requisite level of conduct necessary to state a valid cause of action for IIED, the Plaintiff's Counts VII, VIII and IX should be dismissed. *Noah v. Assor*, 379 F. Supp. 3d 1284, 1300 (S.D. Fla. 2019).

WHEREFORE, the Defendants, MENIN HOTELS, LLC, d/b/a MENIN HOSPITALITY, LLC; 1220 MANAGEMENT GROUP, LLC, d/b/a BODEGA TAQUERIA Y TEQUILA; and AIRSTREAM FOOD SERVICES, LLC, d/b/a BODEGA TAQUERIA Y TEQUILA, respectfully pray that this Honorable Court grant this Motion to Dismiss Plaintiff's Amended Complaint and grant any other relief it deems just and proper.

Respectfully submitted on this 16th day of October, 2020.

By:  ***/s/ Jonathan Smulevich, Esq.***
JONATHAN SMULEVICH, ESQ.
Florida Bar No. 108260
LEAH R. ROSE, ESQ.
Florida Bar No. 84682

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of October, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that a true and correct copy of the foregoing was served via CM/ECF, or as otherwise indicated on the service list, on all counsel or parties of record on the attached service list.

>By: */s/ Jonathan Smulevich, Esq.*
>JONATHAN SMULEVICH, ESQ.
>Florida Bar No. 108260
>LEAH R. ROSE, ESQ.
>Florida Bar No. 84682
>LOWY AND COOK, P.A.
>169 E. Flagler Street, Suite 700
>Miami, Florida 33131
>Telephone: (305) 371-5585
>Facsimile: (305) 371-5563
>E-mail: jonathan@lowypa.com
>E-mail: leah@lowypa.com
>E-mail: assistant@lowypa.com
>Attorney for Defendants

## SERVICE LIST

| | |
|---|---|
| **Michael D. Redondo, Esq.**<br>REDONDO LAW P.A.<br>2828 Coral Way, Suite 201<br>Miami, Florida 33145<br>Telephone: (305) 908-6778<br>E-mail: mike@redondolawfirm.com<br>E-mail: service@redondolawfirm.com<br>*Counsel for the Plaintiff* | **Hartley T. Bernstein, Esq.**<br>BERNSTEIN CHERNEY LLP<br>767 Third Avenue, 30th Floor<br>New York, New York 10017<br>Telephone: (212) 381-9684<br>E-mail: hbernstein@bernsteincherney.com<br>*Counsel for the Plaintiff* |