UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22846-Civ-COOKE/GOODMAN

SHELLEY HUTCHINSON,

    Plaintiff,

vs.

MENIN HOTELS, LLC
d/b/a "Menin Hospitality," *et al.*,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS MATTER is before me on Defendants' Motion to Dismiss (ECF No. 21) Plaintiff's Amended Complaint (ECF No. 19). Plaintiff filed a Response in Opposition to Defendants' Motion (ECF No. 22), and Defendants submitted a Reply in support of their Motion to Dismiss (ECF No. 23). I have reviewed the Motion, the Opposition, the Reply, and the relevant legal authorities. For the reasons discussed below, Defendants' Motion is **GRANTED.**

### I. BACKGROUND

Plaintiff Shelley Hutchinson ("Hutchinson", "Plaintiff"), a resident of New York, brings this action alleging violations of the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA"). Hutchinson suffers from epilepsy, which often causes focal seizures. *Amend. Compl.*, ECF No. 19 at ¶ 14. To manage this illness, Hutchinson travels with her registered service dog, Bear. Bear is trained to warn Hutchinson of potential seizures about five minutes before they occur so she "can assume a safe position and avoid injury." *Id.* at ¶ 19. On August 14, 2019, while Hutchinson was on a visit to Florida, she and Bear went to Bodega Taqueria ("Bodega), a restaurant in Miami. *Id.* at ¶ 21. Upon arrival, Hutchinson was denied entry by an individual named "Kelvin," who identified himself as one of Bodega's managers. *Id.* at ¶ 22-23. Kelvin told Hutchinson that she could not enter the restaurant with Bear because Bodega has a policy that prevented dogs from being allowed into the restaurant. *Id.* In response, Hutchinson explained to Kelvin that she suffered from epilepsy, and that Bear was a registered service dog that helps

1

manage her illness. Hutchinson also provided Kelvin with a copy of Bear's service registration certificate.[1]  *Id.* at ¶ 30.  Kelvin maintained that Hutchinson would not be admitted into the restaurant with Bear, and then asked her to "simulate an epileptic seizure." *Id.* at ¶¶ 31, 32.  Hutchinson declined to do so.  Kelvin laughed at her and said that she did not have a disability.  *Id.* at ¶ 33.  Seeking recompense for the harms caused by these unfortunate events, Hutchinson brings this action, asserting claims under the ADA and the FCRA against Bodega and its parent companies.  Hutchinson also asserts claims of intentional infliction of emotional distress against the Defendants.

Hutchinson alleges that since the incident, she has suffered "periodic panic attacks," "undue stress," "exacerbated seizures," and "night terrors" brought on by the fear that she will be denied future entry to public venues if she brings Bear with her.  *Id.* at ¶ 36.  The Defendants now move to dismiss the action, arguing that: (i) Plaintiff has not alleged standing to pursue her ADA claims; (ii) Plaintiff has not complied with the pre-suit administrative procedures required under the FCRA; (iii) and Plaintiff has not stated a claim for intentional infliction of emotional distress.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) states a complaint must "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "This standard requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action." *Giles v. Manser*, 757 F. App'x 891, 892–93 (11th Cir. 2018) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964–65).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

Additionally, when considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.

---

[1] The Complaint alleges that the incident took place on August 14, 2019, and that Hutchinson provided a copy of Bear's registration certificate to Kelvin on the same day, the Court notes that the certificate submitted with the Complaint has Bear's registration date as September 4, 2019.  *See* ECF No. 19-1 at 1.

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

### III. DISCUSSION

#### A. Plaintiff's Claims Pursuant to the ADA

Defendants argue that Plaintiff lacks Article III standing to pursue her ADA claims because she has alleged no immediate threat of future injury, and that even if she has, her alleged injury is not traceable to the Defendants. Whether plaintiff has Article III standing raises issues of subject matter jurisdiction and, thus, standing must be addressed as a threshold matter. A plaintiff must demonstrate three things to establish standing under Article III: (i) an injury-in-fact; (ii) a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (iii) redressability. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff's injury must be particularized and concrete; and, to obtain injunctive relief, the threat of future injury must be "real and immediate" and not "conjectural or hypothetical." *Kennedy v. Solano*, 735 Fed. App'x 653, 655 (11th Cir. 2018). In addition, an ADA plaintiff must "plausibly show that she will suffer disability discrimination by the defendant in the future." *Id.* Where a plaintiff is unable meet these requirements, courts have found lack of standing.

Applying these principles here, the Court finds that Plaintiff lacks standing to assert her ADA claims because the Amended Complaint fails to allege a threat of future harm that is "real and immediate" and not "conjectural or hypothetical." According to the Amended Complaint, Plaintiff, a New York resident, "desires and intends to return to Bodega once COVID related travel restrictions are lifted and is free to travel." ECF No. 19 at ¶ 38. This is essentially a "some day" intention, which is insufficient to serve as a threat of future injury. *See Lujan*, 504 U.S. at 564. *See also* Kennedy, 735 Fed. App'x at 655 (opining that plaintiff had no actual or imminent injury because plaintiff resided 170 miles from the restaurant at issue, had been to the restaurant only once, and failed to allege a "concrete plan regarding her return"). Accordingly, Plaintiff's ADA Claims, Counts I, II, and III, are **DISMISSED**.

#### B. Plaintiff's Claims Pursuant to the FCRA

Pursuant to Fla. § 760.11, "any person aggrieved by a violation of Section 509.092 may file a complaint with the commission within 365 days of the alleged violation naming

3

the person responsible for the violation and describing the violation." Defendants move to dismiss Plaintiff's FCRA claims on the grounds that Plaintiff has not complied with the pre-suit requirement of filing a complaint with the commission. In response, Plaintiff contends that filing a complaint with the Commission is not a requirement, but merely permissive, and that even if it was a requirement, this requirement is applicable only in employment cases. *See* ECF No 20 at 9. Plaintiff's arguments are unavailing. Florida Courts have consistently held that the word "may" is not permissive, and that the Statute requires an aggrieved party to first file a complaint under § 760.11 prior to filing suit. *See, e.g.*, *Maggio v. Fla. Dep't of Labor & Employment Sec.*, 899 So. 2d 1074, 1079 (Fla. 2005) ("[B]efore maintaining a civil action the claimant is required to file a complaint with the FCHR or EEOC within 365 days of the alleged violation, naming the employer . . .responsible for the violation and describing the violation."). Plaintiff's additional argument that this subsection of the FCRA applies only in employment cases is baffling. The relevant portion of the statute, conveniently ignored by Plaintiff, refers to Section 509.092, which is the applicable portion of the statute in this case. Accordingly, the Court finds that Plaintiff has failed to comply with the required pre-suit process of filing a complaint with the commission. These claims are also **DISMISSED**.

### C. Plaintiff's Claims for Intentional Infliction of Emotional Distress

Plaintiff has not stated a claim for intentional infliction of emotional distress. To survive a motion to dismiss for an intentional infliction of emotional distress claim, a plaintiff must allege: "1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe." *Hoffman v. Office of State Attorney, Fourth Judicial Circuit*, 793 Fed. App'x 945, 955 (11th Cir. 2019) (quoting *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. Dist. Ct. App. 2001)). The conduct must reach levels so outrageous in character, "as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 955-56. "Whether conduct is sufficiently outrageous to rise to the level of intentional infliction of emotional distress is a question of law." *Haberski v. Bufano*, 728 Fed. App'x 903, 909 (11th Cir. 2018). "While there is no exhaustive or concrete list of what constitutes 'outrageous conduct,' Florida common law has evolved an extremely high standard." *Merrick v. Radisson Hotels Int'l, Inc.*, No. 06DV01591 T24TGW, 2007 WL 1576361, at *4 (M.D. Fla. May 30, 2007).

Here, Plaintiff alleges that Kelvin denied her entry to Bodega, asked her to simulate a seizure, and then laughed at her. Kelvin's alleged conduct, distasteful as they were, is not sufficiently outrageous to rise to the level required by Florida law to state a claim for intentional infliction of emotional distress. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) ("Florida courts have been reluctant to find claims for intentional infliction of emotional distress based solely on allegations of verbal abuse."). Accordingly, because the Plaintiff has failed to plead the required element of extreme and outrageous conduct, the claims for intentional infliction of emotional distress are **DISMISSED**.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is **GRANTED**. Counts I through IX of the Amended Complaint are **DISMISSED.** Plaintiff may file an amended complaint **on or before February 15, 2021.**

**DONE and ORDERED** in chambers, Miami, Florida, this 8th day of February 2021.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*